# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | | |
|---|---|---|
| BRIAN NELSON, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 5:16-CV-00049-RWS |
| v. | § § § | |
| RORY L GRIFFIN ET AL., | § § § | |
| Defendants. | § § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Brian Nelson, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights in the Bowie County Correctional Center. Plaintiff named as Defendants Warden Bob Page, Dr. J. Shah, Nurse Regina Lynch, and Rory Griffin, Deputy Director for Health and Correctional Services in the State of Arkansas. Of these Defendants, Director Griffin and Warden Page have previously been dismissed. This Court referred the case to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I.   Background**

A.   Plaintiff's Complaint

Plaintiff is a prisoner of the Arkansas Department of Corrections (ADC) who was housed for almost two years in the Bowie County Correctional Center under an agreement between Bowie County and the State of Arkansas. Plaintiff asserts that he injured his back while being transported from Malvern, Arkansas to the Bowie County Correctional Center on July 31, 2015.

Docket No. 2 at 4. According to Plaintiff, he repeatedly sought medical care but was not able to see the physician, Dr. Shah, until September 9, 2015. *Id.* at 4–9. He states that Dr. Shah was very rude to him and that Dr. Shah told him it was not his backbone but his pelvic bone which was protruding. *Id.* at 5. Plaintiff further explains that the nurse told him she was ordering pain medication and muscle relaxants but it would be a while before they came in. *Id.* at 5–6.

Plaintiff states that two months after not receiving medication except for ibuprofen, Plaintiff filed an emergency grievance. *Id.* at 5. According to Plaintiff, Nurse Lynch responded by stating his pain medication had not yet come in and that the doctor did not order an MRI. *Id.* at 6. Plaintiff further states that he appealed Nurse Lynch's response to Rory Griffin and received a note stating he would get a response to the grievance by December 10, 2015. *Id.* Plaintiff notes that he never received a response to that sick call. *Id.*

Plaintiff further alleges that he continued filing sick call requests and saw Dr. Shah for the fourth time on December 11, 2015. *Id.* at 7. According to Plaintiff, Dr. Shah was rude to him and told him that he would not perform surgery on Plaintiff's back. *Id.* Plaintiff explains that he told Dr. Shah none of the medications were working but was told to leave. *Id.*

On January 6, 2016, Griffin denied Plaintiff's grievance, stating Plaintiff had been seen numerous times for his complaints of back pain and has been treated as deemed appropriate by the medical providers. Docket No. 5-3 at 16. Plaintiff continued filing grievances and sick call requests, some of which were answered by Nurse Lynch but most of which were ignored. *See* Docket No. 5-3 at 17–28. Nurse Lynch told him in multiple grievance responses the Arkansas Department of Correction would not approve an MRI for him because the X-rays taken had proven normal. *See* Docket No. 5-3 at 26. On February 22, 2016, Plaintiff wrote to Warden Page asking for help in getting an MRI but did not receive an answer. Docket No. 2 at 9.

Plaintiff has filed an original Complaint (Docket No. 2), First Supplemental Complaint (Docket No. 5), and a Second Supplemental Complaint (Docket No. 8). Attached to the First Supplemental Complaint are 38 sick call requests, two grievance forms and an inmate request for services form. The response to one of these sick call requests, signed by Nurse Lynch, states "what diagnosis do you have? According to your X-ray your spine is normal. You show no evidence of the diagnosis you're stating you have. ADC denied your MRI because your X-ray is Normal!!!" Docket No. 5-3 at 26.

Attached to the Second Supplemental Complaint are a grievance form and 26 sick call requests, 12 of which are duplicated from the First Supplemental Complaint. Plaintiff also included three affidavits which he signed. Plaintiff later supplemented this complaint with additional documents, including affidavits restating his claims, grievances, and sick call requests. Docket No. 28.

## II.     Motion for Summary Judgment

Nurse Lynch filed a motion for summary judgment (Docket No. 91) arguing that, as a nurse, she cannot order diagnosis or treatment, can only treat very minor medical problems and can follow the treating physician's orders for diagnosis and treatment of other conditions. Docket No. 91 at 3. She stated Plaintiff was being treated by Dr. Shah so she could not be held liable for failure to diagnose or treat Plaintiff's medical condition. *Id.*

Nurse Lynch also argued that Plaintiff had a significant pre-existing back injury from the Arkansas Department of Corrections. *Id.* at 4. She attached medical records showing Plaintiff complained of chronic back pain in December of 2010 and April of 2011 while confined in Arkansas. *Id.* (citing Docket No. 91-2). According to Nurse Lynch, Plaintiff's intake record showed on August 1, 2015, after his arrival in Bowie County, he stated his medical history

Plaintiff has filed an original Complaint (Docket No. 2), First Supplemental Complaint (Docket No. 5), and a Second Supplemental Complaint (Docket No. 8). Attached to the First Supplemental Complaint are 38 sick call requests, two grievance forms and an inmate request for services form. The response to one of these sick call requests, signed by Nurse Lynch, states "what diagnosis do you have? According to your X-ray your spine is normal. You show no evidence of the diagnosis you're stating you have. ADC denied your MRI because your X-ray is Normal!!!" Docket No. 5-3 at 26.

Attached to the Second Supplemental Complaint are a grievance form and 26 sick call requests, 12 of which are duplicated from the First Supplemental Complaint. Plaintiff also included three affidavits which he signed. Plaintiff later supplemented this complaint with additional documents, including affidavits restating his claims, grievances, and sick call requests. Docket No. 28.

## II.     Motion for Summary Judgment

Nurse Lynch filed a motion for summary judgment (Docket No. 91) arguing that, as a nurse, she cannot order diagnosis or treatment, can only treat very minor medical problems and can follow the treating physician's orders for diagnosis and treatment of other conditions. Docket No. 91 at 3. She stated Plaintiff was being treated by Dr. Shah so she could not be held liable for failure to diagnose or treat Plaintiff's medical condition. *Id.*

Nurse Lynch also argued that Plaintiff had a significant pre-existing back injury from the Arkansas Department of Corrections. *Id.* at 4. She attached medical records showing Plaintiff complained of chronic back pain in December of 2010 and April of 2011 while confined in Arkansas. *Id.* (citing Docket No. 91-2). According to Nurse Lynch, Plaintiff's intake record showed on August 1, 2015, after his arrival in Bowie County, he stated his medical history

included a ruptured disk, but he denied any injuries during transport. *Id*. Nurse Lynch suggested that these records show Plaintiff did not suffer an injury during transport but already had an injured back when he arrived in Bowie County. *Id.* at 4–5.

Nurse Lynch also noted that Dr. Shah ordered X-rays for Plaintiff's back, which were taken on November 11, 2015 and returned normal results. *Id.* at 5. An MRI taken in February of 2017, well after the filing of the lawsuit, showed signs of degenerative disk disease, but Nurse Lynch argued Plaintiff failed to show if he had received an MRI earlier, he could have received treatment or surgery which would have improved his condition. *Id.* at 5–6.

Dr. Shah filed a short Motion for Summary Judgment stating he specifically incorporated all law, facts, arguments, and prayers asserted in Nurse Lynch's motion. Docket No. 92.

### III. Plaintiff's Response to the Motions

In his response to the summary judgment motions, Plaintiff insisted he was injured upon his arrival in Bowie County, stating he reported this injury to the admissions officer. Docket No. 105 at 2. He contended Nurse Lynch and Dr. Shah prevented him from receiving proper care from a back specialist, noting Nurse Lynch signed most of the responses to his grievances. *Id*. at 10–11.

Plaintiff argued he was never diagnosed with a back injury during his time in the Arkansas Department of Corrections, but conceded he was given pain medication. *Id.* at 14. He speculated the X-rays were read as normal to mask the fact he needed treatment, and stated he saw a back specialist on June 21, 2017, who gave him a diagnosis and recommended treatment for on-going pain relief including physical therapy, steroid injections, and a medication called Robaxin. *Id.* at 16–17. Next, Plaintiff contended the medical form stating he saw a nurse on August 1, 2015 was a forgery. He asserted he did not deny injury during transport and did not sign any forms denying injury during transport. *Id.* at 15.

Plaintiff attached a letter from Dr. Noojan Kazemi of the University of Arkansas for Medical Service dated June 21, 2017. Docket No. 105-1 at 6. This letter states that the doctor did not believe there was a role for surgical intervention but instead recommended physical therapy, a muscle relaxant called Robaxin, and epidural spinal injections. *Id.* at 8.

According to a letter to Plaintiff dated September 15, 2016, from the Texas Commission on Jail Standards, the X-rays of Plaintiff's back showed no abnormalities and Plaintiff's medical records from Arkansas showed he claimed to have a ruptured disk even before his arrival in Bowie County. Docket No. 105-2 at 36. He is on Robaxin and naproxen. *Id.* The letter further stated Dr. Shah requested an MRI but the request was denied by the Director of the Medical Department for the Arkansas Department of Corrections because the X-rays and medical examinations showed no abnormalities. *Id.*

## IV. The Magistrate Judge's Report and Recommendation

After review of the pleadings, the Magistrate Judge issued a Report recommending the motions for summary judgment be granted and the lawsuit dismissed. Docket No. 109. The Magistrate Judge characterized Plaintiff's claim as one of deliberate indifference to his serious medical needs and stated deliberate indifference is an extremely high standard to meet, requiring a showing the jail officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct evincing a wanton disregard for his medical needs. *Id.* at 15–16 (citing *Domino v. TDCJ-ID*, 239 F.3d 752, 756 (5th Cir. 2001); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

The Magistrate Judge observed Plaintiff's medical records showed he had a back injury prior to his arrival at Bowie County and denied being injured during transport. *Id.* Although Plaintiff contended these medical records had been fabricated, the Magistrate Judge stated

conclusory allegations of falsification of medical records are insufficient to defeat a motion for summary judgment. *Id.* at 17.

Even assuming Plaintiff was correct and the records were fabricated, however, the Magistrate Judge nonetheless determined there was no showing of deliberate indifference. *Id.* Plaintiff was seen by medical personnel at the Bowie County Jail on multiple occasions, receiving X-rays, pain medications, and muscle relaxants. *Id.* Plaintiff's documents show he did not receive an MRI because the Arkansas medical director refused to approve it, and Plaintiff failed to demonstrate Dr. Shah or Nurse Lynch had authority to schedule an MRI after approval was denied. *Id.* In addition, the Magistrate Judge stated Plaintiff did not show the failure to schedule an MRI after his X-rays proved normal amounted to deliberate indifference. *Id.* Plaintiff's disagreement with the medical care ordered or dissatisfaction with the results was not tantamount to a showing of deliberate indifference. *Id.* at 19.

## V.  Plaintiff's Objections

In his objections, Plaintiff first argues the intentional refusal to provide medical care despite knowledge of the need can amount to deliberate indifference. Docket No. 115 at 1–2. He points to Dr. Kazemi's June 21, 2017 letter, which recommended physical therapy, Robaxin, and epidural steroid injections, and complains that he has never received such treatment. *Id.* at 2.

Plaintiff filed a notice of change of address on May 25, 2017 (*see* Docket No. 83), stating he had been transferred from Bowie County, Texas to Wrightsville, Arkansas. The fact Plaintiff did not receive the treatment recommended by Dr. Kazemi in June of 2017, at a time when he was no longer in Bowie County, does not show deliberate indifference on the part of Bowie County personnel. In any event, the failure to follow a course of treatment recommended by an outside doctor does not itself show deliberate indifference. *Clifford v.Doe,* 303 F.App'x 174,

2008 U.S. App. LEXIS 25300, 2008 WL 4210663 (5th Cir. 2008) (citing *Stewart*, 174 F.3d at 535). Accordingly, this objection is without merit.

Next, Plaintiff complains his MRI was denied for over a year and, when it was finally taken, the test showed a serious medical need. Docket No. 115 at 4. According to the documents furnished by Plaintiff, the MRI was denied by Dr. Jeffrey Setvie, the medical director for the Arkansas Department of Corrections, who is not a defendant in this lawsuit. Docket No. 105-2 at 16. The reason for the denial was Plaintiff's X-rays were normal. *Id.* Plaintiff has failed to show Dr. Shah or Nurse Lynch had any involvement with or responsibility for Dr. Setvie's decision to deny the MRI, nor has he shown the failure to schedule an MRI after X-rays proved normal amounted to deliberate indifference. *Id.* Accordingly, this objection is without merit.

Plaintiff states he sent in numerous sick call requests which were not answered or which simply had the notation "duplicate sick call" written at the bottom. Docket No. 115 at 3. The summary judgment evidence shows Plaintiff filed a substantial number of sick call requests, including over 50 during the first year he was in the jail. Some of these sick call requests were not answered, but many were. By August 22, 2016, Plaintiff had seen Dr. Shah seven times and X-rays had been taken, which proved normal. The fact Plaintiff did not receive answers to every one of the sick call requests he filed does not show deliberate indifference to his serious medical needs, particularly in light of the fact many of his sick call requests were answered and he saw medical personnel on multiple occasions. This objection is without merit.

The fact that Plaintiff did not agree with some of the answers he received to sick call requests does not show deliberate indifference. The responses to his sick call requests show the medical staff repeatedly tried to explain to him he was not approved for an MRI because his X-

rays had turned out normal. While Plaintiff complains Nurse Lynch sent him a rude response to a sick call request in February of 2016 (*see* Docket No. 5-3 at 26), this response simply advised him X-rays showed his spine was normal and the Arkansas Department of Corrections denied his MRI for that reason. The summary judgment evidence showed this was the third time in six weeks Plaintiff had been given this same information. Even if the tone of Nurse Lynch's response could be considered rude or intemperate, Plaintiff has failed to show this amounts to deliberate indifference. This objection is without merit.

Plaintiff also argues there are many genuine issues of material fact in the form of sick calls, grievances, affidavits and witnesses to testify on his behalf. Docket No. 115 at 7–11. He contends he is in pain and received a diagnosis from Dr. Kazemi, so his evidence is not weak or tenuous. *Id.* at 11. That Plaintiff was ultimately determined to have a back injury is not probative of whether the Defendants acted with deliberate indifference. Plaintiff cites *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994), in which the Supreme Court explained:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
>
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Under this standard, Plaintiff must show Dr. Shah and Nurse Lynch knew of and disregarded an excessive risk to his health or safety. The summary judgment evidence shows he saw medical personnel numerous times, received several different kinds of medications, and was given X-rays. Dr. Shah requested permission for an MRI but this was initially refused by the

medical director for the Arkansas Department of Corrections. Plaintiff was later given an MRI. After he left Bowie County, an Arkansas physician prescribed a specific course of treatment for him. In light of this evidence, the Court cannot conclude that Dr. Shah or Nurse Lynch knew of and disregarded an excessive risk to Plaintiff's health or safety.

The fact the treatment provided was not as effective as Plaintiff would have wanted or the fact that an Arkansas physician later prescribed a different course of treatment does not show Dr. Shah or Nurse Lynch were deliberately indifferent to Plaintiff's serious medical needs. *See, e.g., Armenta v. Stanley*, 211 F.App'x 266 (5th Cir. 2006) (finding that a claim that defendants should have employed a different course of treatment or ordered an X-ray at an earlier time did not support a constitutional claim grounded in deliberate indifference). Plaintiff's objections in this regard are without merit.

With regard to qualified immunity, Plaintiff maintains he had an injury which "any lay person can easily recognize" by the way he walks and the fact he is sometimes unable to breathe. Docket No. 115 at 17. He contends the risk was obvious, permitting the inference the Defendants did recognize it. *Id.* Plaintiff refers again to his recommended course of treatment from June of 2017, after he left Bowie County, and states he has numerous affidavits regarding the verbal abuse he received from Dr. Shah and Nurse Lynch, along with a number of other exhibits attached to his objections. *Id.* at 17–19. He asserts he has overcome the defense of qualified immunity because all reasonable officials would know the Defendants' actions violated the Constitution. *Id.*

As the Magistrate Judge determined, qualified immunity protects government officials from liability for monetary damages in their individual capacities insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known. *Thompson v. Mercer*, 762 F.3d 433, 436–37 (5th Cir. 2014). Here, Plaintiff has failed to show a constitutional violation occurred. Nor has he shown all reasonable officials would have known the Defendants' actions violated the Constitution. Instead, Defendants did recognize Plaintiff's claims of injury, giving him pain medication, muscle relaxers, and X-rays, later following up with an MRI in February of 2017. The fact Plaintiff disagreed with the medical care he received or the fact that he believed it should have been more effective does not amount to a constitutional violation. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997). Accordingly, Plaintiff has failed to overcome the defense of qualified immunity.

## VI. Plaintiff's Exhibits to his Objections

The exhibits attached to Plaintiff's objections do not compel a different result. Plaintiff's first exhibit is a medical record from the Arkansas Department of Corrections dated December 10, 2010, showing a complaint of chronic back pain stemming from an all-terrain vehicle accident. His second exhibit is a medical record from the Arkansas Department of Corrections dated April 6, 2011, when he told the nurse at the Cummins Unit, "I have been having extreme back and neck pain and headaches. I have felt so bad the last two days, I could hardly move. I have had extremely high fever too because my fever wouldn't break until I took four ibu[profen] then when it breaks my head and body is wet all over with sweat."

Plaintiff's third exhibit is a medical record from the Arkansas Department of Corrections dated November 4, 2011, when he presented to the nurse at the Wrightsville Unit with abnormal gait due to the pain in his back and left leg. The nurse's notes say "inmate stated that complaint about back pain C5 to C6 is ruptures [sic]."

Plaintiff's fourth exhibit is a medical record from Arkansas dated November 28, 2011, which he presented to the nurse at the Wrightsville Unit with a complaint that "I am having a lot of excessive pain in my lower back from a ruptured disk in my lower back."

Plaintiff's fifth exhibit is a condensed health services encounter from Bowie County dated December 17, 2015. This medical record reads, in pertinent part, "ADC did not approve MRI due to normal X-ray. Currently rec[eiving] pain medications."

The sixth exhibit is a condensed health services encounter from Bowie County dated February 12, 2016. This record, signed by Nurse Flieder, reads in pertinent part "I/M states that we are not giving him the correct medicine for his 'nerve pain.' Also that he needs a cane to walk. I/M has never been DX [diagnosed] with nerve pain. He gave himself this dx. His X-ray is normal. His exam completed by Dr. Shah ruled out nerve pain. Receives the meds that Dr. Shah ordered for him. I/M has been seen walking to laundry with a normal gait. He also has no difficulty walking up and down the stairs to get to and from his pod. The only time he is seen limping is when he is coming to medical."[1]

The seventh exhibit is a condensed health services encounter dated April 11, 2016, in which Plaintiff complained of his lower back and leg pain. Nurse Michelle Arnold wrote "MD seen numerous times for this issue. X-ray normal. Physical exam not consistent with reports of nerve pain. Currently rcv [receiving] medication. ADC denied MRI due to normal X-ray."

Exhibit 8 is a condensed health services encounter dated May 2, 2016, in which Plaintiff asked to see the doctor and the response was Plaintiff had been referred to the doctor on April 28 for the next MD clinic.

---

[1] Plaintiff asserts Nurse Flieder is lying and he never used the stairs in the Bowie County Correctional Center, but always took the elevator.

Exhibit 9 is a medical record dated July 27, 2017, showing Plaintiff received a left lower extremity Doppler ultrasound, which revealed a non-occlusive thrombosis in his left leg. Exhibit 10 reflects a CTA exam on Plaintiff's chest on July 31, 2017. These tests were ordered by a physician named Dr. Melanie Jones after Plaintiff was no longer in Bowie County, and were performed at the St. Vincent Infirmary Medical Center in Little Rock, Arkansas. Exhibit 11 reflects an examination in the Arkansas Heart Hospital in Little Rock on November 13, 2017, during which Plaintiff was diagnosed as having a post-operative deep vein thrombosis.

None of Plaintiff's exhibits show the Defendants were deliberately indifferent to his serious medical needs. The first four of these exhibits concern his back pain while in Arkansas, long before arriving in Bowie County. Although Plaintiff insists he did not have any diagnoses of back problems and did not have such severe pain while in Arkansas, these exhibits indicate otherwise.

Plaintiff's fifth, sixth, and seventh exhibits confirm the MRI was denied by the Arkansas authorities and not Dr. Shah or Nurse Lynch; these exhibits also show Plaintiff was receiving pain medication. While Plaintiff complains Nurse Flieder lied in the sixth exhibit, she is not a defendant in the case, and Plaintiff has not shown any alleged untruthful statements by Nurse Flieder show Dr. Shah or Nurse Lynch were deliberately indifferent to his serious medical needs.

Plaintiff's eighth exhibit evidences he asked to see the doctor and was told he had been referred to the doctor a few days earlier for the next MD clinic. The fact Plaintiff was scheduled to see the doctor does not show deliberate indifference to his serious medical needs.

Plaintiff's ninth, tenth, and eleventh exhibits concern medical tests he received after leaving the Bowie County Correctional Center. To the extent Plaintiff may be claiming these tests should have been run while he was at Bowie County, he has not shown the failure to do so

amounts to deliberate indifference to his serious medical needs. *See Bennett v. Louisiana ex rel. Department of Public Safety and Corrections*, 2009 U.S. App. LEXIS 853 (5th Cir. 2009) (stating "while the Appellees may very well have exercised poor medical judgment in not performing additional tests on Russell [the deceased], Bennett has not shown that their actions rise to the level of deliberate indifference") (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (explaining that a decision whether to provide additional medical treatment is a classic example of a matter for medical judgment)). Plaintiff's exhibits fail to show the Defendants were deliberately indifferent to his serious medical needs.

## VII. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Initial Report and Recommendation of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

**ORDERED** the Plaintiff's objections are overruled and the Initial Report and Recommendation of the Magistrate Judge (Docket No. 100) is **ADOPTED** as the opinion of the Court. It is further

**ORDERED** that Defendants' Motions for Summary Judgment (Docket Nos. 91, 92) are **GRANTED** and the above-styled civil action is **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that any and all other motions pending in this matter are **DENIED**.

**So ORDERED and SIGNED this 12th day of March, 2018.**

 

                                                ROBERT W. SCHROEDER III
                                                UNITED STATES DISTRICT JUDGE